# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| OLD REPUBLIC SURETY COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CONSOLIDATED CONSTRUCTION &<br>ENGINEERING COMPANY, INC.,<br>ATAPATTU M. MADAWALA,<br>DARSHINI MADAWALA,<br>TIMOTHY D. GROGAN and<br>LINDA L. GROGAN,<br><br>    Defendants. | Civil Action No. TDC-16-1104 |

## MEMORANDUM OPINION

On April 14, 2016, Plaintiff Old Republic Surety Company ("Old Republic") filed this action based on the alleged breach of an indemnity agreement by Defendants Consolidated Construction & Engineering Company, Inc. ("Consolidated"), Atapattu M. Madawala, Darshini Madawala, Timothy D. Grogan, and Linda L. Grogan. Old Republic alleges that pursuant to the agreement, Defendants were required, but failed, to indemnify Old Republic for all losses and costs it sustained upon Defendants' failure to complete the rehabilitation of a steel arch culvert in Monroe County, Pennsylvania. Pending before the Court is Old Republic's Motion for Summary Judgment. Having reviewed the briefs, pleadings, and other submitted documents, the Court finds that no hearing is necessary to decide this Motion. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

On March 26, 2015, Consolidated, a construction company owned and operated by Defendants Atapattu Madawala and Timothy Grogan, contracted with the Federal Highway Administration ("FHWA") to repair a steel arch culvert in the Delaware Water Gap National Recreation Area in Monroe County, Pennsylvania. On the same day, Plaintiff Old Republic, a surety company that issues payment and performance bonds on behalf of construction companies, issued a performance bond on Consolidated's behalf for the culvert project. As consideration for the bond, Defendants entered into a General Agreement of Indemnity ("Agreement") with Old Republic.

The Agreement provides, in relevant part, that Defendants "shall continually indemnify and save [Old Republic] harmless from and against every claim, demand, liability, loss, cost and expense which [Old Republic] may pay, sustain or incur in consequence of having executed" the performance bond or in consequence of enforcing Defendants' obligations under the Agreement. Agreement § III.B., Joint Record ("J.R.") 013. Old Republic was granted "the exclusive right . . . to determine whether any claim, demand, suit or judgment brought against" the bond should be paid. *Id*. The Agreement also states that Defendants "agree[] to accept the voucher or other evidence" of Old Republic's payments on the bond as "prima facie evidence of the propriety thereof, and of [the Defendant's] liability therefore to [Old Republic]." *Id*. Finally, the Agreement states that, should Defendants fail to perform any contract covered by the performance bond, Old Republic "shall have the absolute right, at its option and in its sole discretion . . . to take possession of any part or all of" the contract project, and "at the expense of [the Defendants] to complete or arrange for the completion" of the project. Agreement § III.J., J.R. 014. Should Old Republic complete the project, Defendants "shall promptly upon demand

pay to [Old Republic] all expenses so incurred plus interest thereon unless [Defendants] can prove [Old Republic] acted in bad faith." *Id*.

On June 18, 2015, the FHWA issued a notice of termination to Consolidated. The notice stated that the FHWA had issued several warnings to Consolidated over its lack of progress on the culvert repair. According to the notice, Consolidated had "used over 80 percent of contract time" yet "less than 25 percent of the contract work ha[d] been completed." J.R. 021. Consolidated's "lack of performance" was "the determining factor" in the FHWA's decision to terminate the contract. *Id*. The FHWA also asserted a claim against Old Republic's performance bond.

Old Republic was made aware of the various warnings Consolidated had received from the FHWA. According to Dennis McDonnell, Old Republic's Vice President of Claims, after the termination notice was issued, Consolidated asked Old Republic to complete the culvert repairs using the subcontractors Consolidated had already engaged. Old Republic responded by retaining a consulting company, the Guardian Group, to investigate the claims made against the bond and to arrange to complete the project.

After investigating the FHWA's performance bond claim and concluding that the claim was meritorious, the Guardian Group sought proposals from several general contractors to complete the project. The Guardian Group also reached out to the subcontractors that had been working with Consolidated to see if they would agree to complete their work for the same price as when Consolidated was the general contractor. In the end, only one general contractor—Tecvac—submitted a proposal to complete the project. Tecvac's proposed price was $299,935, which was over $70,000 more than the $227,415 price that the FHWA and Consolidated had originally agreed upon for the entire project. When asked to explain the lack of interest from

3

other general contractors and the higher price, McDonnell testified in his deposition that there were many factors at play: (1) According to FHWA, only five percent of the work had been done, and some of Consolidated's work had to be redone; (2) when a new contractor is required to mobilize quickly to start on a new job, an additional charge is typically included; (2) Consolidated's original accepted proposal was particularly low, as evidenced by another contractor's original bid of $330,000; (3) at least one of Consolidated's subcontractors had underestimated the cost of its portion of the work, due to a misunderstanding of the number of trees that needed to be removed as part of the project; (4) performing contract work for the FHWA requires companies to meet additional requirements by which not all contractors are willing to abide; and (5) the culvert was in a relatively remote area, making it a less appealing project. Ultimately, Tecvac was paid only $239,440.35, because its proposal had included the cost of more work than the FHWA actually needed completed.

In addition to paying Tecvac to complete the project, Old Republic also received claims from several of Consolidated's former subcontractors that had performed work before the notice of termination was issued but had not yet been paid. Old Republic only paid one such claim, submitted by painting subcontractor Postupak, whose claim for $19,035.45 was investigated by Guardian and found to be legitimate.

Finally, Old Republic paid $25,391.72 in consulting fees and costs associated with the completion of the culvert repair, and incurred $63,956.85 in attorney's fees and costs in its efforts to obtain Defendants' compliance with the Agreement. Thus, in total, Old Republic spent $347,824.37. For completion of the project, the FHWA paid Old Republic $168,524.17. Old Republic has received $3,558 in attorney's fees as a result of a successful motion for sanctions against Defendants. Thus, Old Republic alleges a total loss of $175,742.20.

# DISCUSSION

Old Republic seeks summary judgment based on its claim that the Agreement obligates Defendants to make Old Republic whole for the amounts it expended to finish the culvert repair and to pursue its rights under the Agreement. In response, Defendants effectively dispute only the reasonableness of Old Republic's expenses.

## I. Legal Standard

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id*. at 248–49.

## II. Mitigation of Damages

Maryland law, which the parties agree applies in this case, requires that "the surety must act in a reasonable manner in handling or paying claims." *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 844 A.2d 460, 473 (Md. 2004). To determine whether a surety's payment

was reasonable, and therefore whether the indemnitor will need to make the surety whole for that payment, Maryland courts consider four factors: "(1) the obligations of the surety as provided by the terms and coverage of the bond; (2) whether the principal has made more than generalized demands that the surety deny the claim; (3) the cooperation, or lack thereof, by the principal, in dealing with the surety; [and] (4) the thoroughness of the investigation performed by the surety." *Id.* at 474 (citations omitted).

In support of their argument that Old Republic's payments do not meet this standard, Defendants question whether Consolidated was properly terminated; whether Old Republic could have hired Consolidated—rather than Tecvac—as the completion contractor; whether Tecvac's bid was reasonable; and whether the Guardian Group's consulting fees could have been lower. They argue that Old Republic did not do enough to investigate these questions, and that there are material facts in dispute that preclude summary judgment. Defendants, however, offer little evidence in support of their position and point to only a handful of facts from the record. Specifically, they note that McDonnell testified in his deposition that he did not perform an "in-depth analysis" of Consolidated's termination, that he did not seek out alternative consultants or try to negotiate down the Guardian Group's prices, and that he never offered Consolidated the opportunity to complete the culvert repairs by itself. Defs.' Mem. Opp. at 4, ECF No. 70.

These assertions are insufficient to create a genuine dispute of material fact regarding the reasonableness of Old Republic's expenditures to complete the project. The evidence in the record, even viewed in the light most favorable to Defendants, reveals that Old Republic acted reasonably throughout this episode. There is no evidence that Old Republic's use of the Guardian Group to investigate the FHWA's claim against the performance bond was unreasonable. When asked why he had retained the Guardian Group, McDonnell testified that he

had concluded that the consulting company was best for this project because he had worked with it before, it was a local company, and the FHWA had made clear that it wanted the consultant on-site to provide supervision. Regarding the Guardian Group's charges, McDonnell testified that he reviewed its billings as they came in and, if they had been inappropriate, he would have challenged them, as he had done on other projects in the past.

There was nothing unreasonable about Old Republic failing to allow Consolidated to complete the work. McDonnell provided undisputed testimony that Consolidated itself told Old Republic that it was not going to challenge its termination and that it wanted Old Republic to complete the project. It was not until December 2015, several months after Old Republic hired Tecvac in August 2015, that Old Republic learned that Consolidated had changed its mind and was protesting the termination. As for the possibility that Consolidated could have served as the completion contractor after its termination, McDonnell testified that not only did Consolidated never ask for that opportunity, but the FHWA made clear to him that Consolidated would not be welcomed back to the project.

Finally, Old Republic took reasonable steps to mitigate the cost of completing the culvert. Through the Guardian Group, it sought out bids from multiple completion contractors but received only one bid, from Tecvac. Consolidated did not protest when Old Republic took on the project to complete or when it hired Tecvac. Although Tecvac's $299,935 bid was higher than Consolidated's original price, McDonnell adequately explained the discrepancy as based in part on the immediate need to mobilize and the likelihood that Consolidated's original proposal was low. As it turns out, Tecvac received only $239,440.35, approximately $12,000 more than Consolidated's contract price. Old Republic also asked Consolidated's subcontractors to remain on the project at their original prices, and many agreed to those terms. In the face of these facts,

7

and the lack of any evidence offered to the contrary, Defendants' conclusory statements that Old Republic failed to act reasonably are insufficient to demonstrate that a genuine dispute of material fact remains. *See Argonaut Ins. Co. v. Wolverine Constr., Inc.*, 976 F. Supp. 2d 646, 654–55 (D. Md. 2013) (holding that "unsupported speculation" that a surety could have reduced its damages is insufficient to avoid summary judgment); *see also Westfield Ins. Co. v. Rainey Contracting, LLC*, No. 2:15-cv-247, 2017 WL 2484273, at *4–5 (E.D. Tenn. June 8, 2017) (holding that conclusory assertions in the defendant's briefing were insufficient to raise a genuine issue of material fact regarding the surety's attempts to mitigate damages). Summary judgment for Old Republic will therefore be granted.

## III. Attorney's Fees and Costs

Under the Agreement, Old Republic is entitled to all costs and expenses incurred to "enforce any and/or all obligations of [Consolidated]." Agreement § III.B., J.R. 013. After the briefing on this Motion was completed, Old Republic filed a supplemental memorandum to notify the Court that it had received an additional payment from the FHWA, therefore decreasing its damages. Consolidated responded by asserting, for the first time, that Old Republic's claim for attorney's fees was also unreasonable. At the Court's request, Old Republic submitted a clarification to acknowledge that it had already received $3,558 in attorney's fees as a result of a successful motion for sanctions, such that it now seeks a total of $60,398.85 in attorney's fees and costs.

To assess Old Republic's claim for attorney's fees, the Court applies the traditional lodestar methodology factors, beginning with a lodestar calculation defined as the number of hours "reasonably expended" by counsel multiplied by a "reasonable hourly rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); *Best Medical Intern., Inc. v. Eckert*

*& Ziegler Nuclitec GmbH*, 565 F. App'x 232, 236–37 (4th Cir. 2014) (applying the traditional lodestar methodology to determine the reasonableness of attorney's fees in a state law contract dispute). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). In Appendix B to the Local Rules of the United States District Court for the District of Maryland, *available at* http://www.mdd.uscourts.gov/sites/mdd/files/LocalRules.pdf, this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g.*, *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000).

Old Republic's attorneys represent that they expended approximately 269.2 hours on this case and incurred $996.85 in costs. Having reviewed the submitted billing sheets, and recognizing that this case included discovery, discovery motions, and a summary judgment motion, the Court finds the claimed hours and costs to be reasonable. Old Republic's attorneys further represent that they have billing rates of $250 per hour and $230 per hour, which are within the ranges set by this Court for attorneys of their experience levels for all but one attorney. *See* D. Md. Local R. App. B (setting a range of $300–475 per hour for attorneys with more than 20 years of experience, a range of $275–425 per hour for attorneys with 15 to 19 years of experience, and a range of $225–350 per hour for attorneys with 9 to 14 years of experience). One of Old Republic's attorneys had been a member of the bar for 3 to 4 years at the time these services were rendered. The Local Rules set a guideline of $150–225 per hour for attorneys of that experience level. His hourly rate will therefore be reduced to $225 per hour. Even with this modification, the requested amount of $60,398.85 in attorney's fees and costs is consistent with these guidelines and is therefore reasonable.

## CONCLUSION

For the foregoing reasons, Old Republic's Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: January 30, 2018

/s/ THEODORE D. CHUANG
United States District Judge